The next case on for argument is United States v. Murillo-Morales. May it please the court, my name is Alan Nelson and I represent the appellant. This court has not yet addressed the issue of whether a passenger in a vehicle who has the right to exclude others from the vehicle has standing to challenge its search. The facts here make that issue ripe for consideration. Appellant was alone in the car and left alone there as its custodian for close to 15 minutes immediately before its search. During that time, he had a clear right to exclude others from the vehicle. The right to exclude is the key issue, not the possessory or ownership interest the district court erred by determining under these facts he lacked standing. The fruits of that search, most significantly his cell phone and its contents, comprised the heart of the government's proof of his agreement to join the conspiracy, as opposed to his mere presence. Had an evidentiary hearing been granted, the court would have discovered, as the government later admitted, that the complaint alleged materially false facts. Appellant was observed standing by the already opened front driver's door of the vehicle, not opening and then leaning into the rear driver's door, ostensibly for the purpose of opening the vehicle's trap. The district court would have also discovered from the hearing that the trap's opening mechanism didn't operate from that door, but rather opened from the middle of the dashboard of the vehicle. And... He's outside the vehicle. He's outside the vehicle at the front door. He's arguing that I have standing, that is, I have an evidentiary... No, he was in the car for 15 minutes before that. He was alone in the car when the driver of the vehicle had left the location, gone up to the apartment in order to do the alleged transaction, and he was left alone in the vehicle for close to 15 minutes. He has more of a right than just the passenger, because he has exclusive custody and control of the vehicle during that period of time. The driver's inside, the driver's inside doing whatever he's doing. And that's the guy. I mean, if I leave my car and leave some hitchhiker that I've picked up along the road, out of kindness of my heart, of course, and he doesn't have a right to say what may, or he doesn't have standing, in my view, to... Because he's an occupant of the car, he doesn't have custodial control of it. He has exclusive, he has the exclusive right to exclude third parties from the vehicle during that... My hitchhiker does? Other than the driver of the car. My hitchhiker does? Driver's what? Driver's what? Oh, all right. Driver's out of the car. He's the front seat passenger. As the front seat passenger, he has the exclusive right to tell a bum who comes walking up, hey, you can't come in the car. What if the driver's wife comes walking up and tries to get in the car? If he knew the driver's wife, there might be an issue there concerning it. But if he didn't, no. That wouldn't come into play. Wow. He could keep her around, huh? If he wouldn't know her, how would he know that that is the person that's there? This court's decisions have exclusively spoken in terms... That at last is using, I think, the phrase begging the question correctly. That assumes that he has the right to keep her out. That's correct. He has the right to keep her out. He has the right to keep her out. The essential issue in all of the court's decisions dealing with passengers is not custody of the control, but rather the right to exclude a third party from the vehicle. And this is an unusual circumstance where a vehicle... We know that he didn't have... We know he was the only one in the car. I understand that. How do we know that he had the right to keep... Under what law did he have the right to keep somebody out? To keep anybody else other than the driver out? Where does that law arise from? It would arise from the fact that he's present in the vehicle. No, no, no. He's saying he had the right. Yeah? He's saying he had the right. If he had the right, that sounds to me like it's a legal right. To exclude others from the dominion that he was in at that point. That's a legal right arise. He would have a Fourth Amendment expectation of privacy in the car and its contents while he's present alone in the vehicle. But he's outside the vehicle. No, no. He's in the vehicle for a 15-minute period of time. No, he's outside the vehicle when he's observed doing it. Yes. He's in the vehicle. He's in the vehicle sitting there. They drive up. He exits the vehicle for about 30 seconds, gets back into the vehicle. The driver of the vehicle leaves, is gone for more than 15 minutes. When he returns to the location, the driver enters the vehicle, and within two to three seconds, the car is stopped. Well, not stopped. It's trapped where it is. In essence, seized at that time, because the vehicle is seized. At that point, the driver is behind the wheel again. And the driver has the right to exclude people, and the passenger doesn't. Because if the driver says to somebody, get in the back seat, the passenger can't say, oh, no, no. You can't do that. I don't think the record was clear that the driver was actually seated in the seat. It was more, this happened in a fluid motion. Basically, as the driver was coming in, the police arrived. The driver was present, and the police arrived. Right? So the issue really comes down to whether or not, under the unusual circumstance of somebody being in a car for 15 minutes, as opposed to being by himself, as opposed to being, say, a passenger in a livery cab, where he's in the back seat with the driver all the time. That's virtually all the cases that the court has dealt with in the issue of what expectation of privacy a passenger has for standing. This is a very different scenario. It's one that the court hasn't considered before. It came up somewhat in Paulino, where the court eventually remanded, I believe, the purpose of the determination in the district court level of what expectation of privacy the rear passenger had in a bag that was in the back seat of the car, but not to the location in the back of the car. So this is a somewhat unusual circumstance where, for a 15-minute period of time, he's alone in the car. And the court never considered the factual issues involved because it denied on the papers itself that there was standing in this case, relying upon Paulino and Santillan and that line of cases by the court. All right. If we get over the standing hurdle, you got any problem with probable cause? I believe here the issue with respect to probable cause is that there was a misapprehension by the officers of virtually everything that took place before the time that the property was acted on. Misapprehension isn't our stand. No, this has to do with what the probable cause issue is because if we froze on the probable cause issue, what we're dealing with is the officers making a misapprehension of what they're observing taking place. They have reason to believe, based upon the investigation that had taken place, that there's going to be this trap in the car. They observe my client walk around to the front driver's side of the car, standing by the front side of the car, and a hazard light goes on on the car. They feel that was sufficient for probable cause. But that's not what they say in the complaint. What they say in the complaint is, and what the court relied upon in denying the suppression hearing, is that the driver, that the passenger, my client, had come around the car to the rear passenger door, opened that door, leaned into the car at that point in time. That's a very different tactical scenario than walking around to an open front driver's side door. The second thing that was learned during the course of the eventual trial, but would have come out... Why would somebody be leaning in the window of the driver's side rear passenger door? That didn't occur. There was nobody... But that's what you said. I didn't think it occurred either, but I thought you just said that's what occurred. The complaint states that the agents observed my client go into the rear driver's side door of the car, walk around from the front passenger... And enter the vehicle. Yes. And lean into the vehicle at that point in time. But that's not... What do you mean lean into the vehicle? If you lean into the vehicle, you're outside it. Was he inside or outside? The evidence at trial showed he was never inside the vehicle. Other than when he was in the front passenger seat, he then exited the car, walked around to the driver... Yes, yes, yes. And then what? And then he walked back and got back into the car. What did he do between the time he got out and walked around and then walked back again? Other than walking around the car, there wasn't any testimony to indicate that he did much of anything other than working with... Forget the much of anything. What was it? He was looking at the interior driver's side door along with the driver of the vehicle. So he was looking inside the driver's door? Yes. So the first piece of probable cause that was relied upon was a misrepresentation in the complaint itself. The second was the belief that the mechanism that would operate the track was in some way located on the driver's side of the vehicle. But the evidence demonstrated it was not. It worked off of a device that was located on the central console of the car actually and the dashboard itself. And third, in operating the track, it did not turn any hazard lights or flashes on and off. So each of the three things that the officers relied upon, or the agents rather, relied upon for purposes of probable cause at that time, and which the court then adopted and proved to be inaccurate. How does that affect probable cause? I would submit that it's not probable cause because it's just as consistent with an innocent action to walk around to the driver's side of the vehicle, talk to the driver and look at something on the driver's side of the vehicle. Isn't it weird if you're sitting next to the driver, you get out and you walk around and talk to the driver through the driver's window? Why would you do that? No, he wasn't talking to him through the window. He was standing by an already open door, looking at the side of the door. Whatever. I would submit that that's inconsistent in and of itself. If you wanted to talk to the driver and you're sitting in the passenger seat, why would you get out and walk around to the other side? In other words, what the police were looking at was something that was unaccountable and really odd. And they drew, and since they expected a trap to open, they had probable cause to think that your client was assisting in that or providing advice about it. I understand the court's position, but I would respectfully disagree. That's not the court's position. I mean, that's the cop's position. Yes, I understand that's the police's position, but is that objectively reasonable under the circumstances? And I would submit it's not because the facts demonstrated each and every one of the points of information that they relied upon proved to be inaccurate. The trap did not open from the driver's side door. He was not by the rear driver's side door. The trap opened from the middle, and the hazard lights flashing on and off had absolutely nothing to do with the opening of the trap. So it turned out that their surmises and their reasonable assumptions were based upon facts that didn't work. The way one opens a trap, apparently, is by touching and manipulating things that don't say trap. They say something else. So your windshield wipers go on, or your lights flash, or whatever. So the police are looking at a car. They expect the trap to be opened, and they see a peculiar phenomenon, something that's otherwise unaccountable, and they assume the trap is being opened. It would have been an assumption that the court would have had to make based upon an evidentiary determination, and having denied standing in order to have it litigated, the court erred and committed clear error. It is our position. So if we agree with the court's determination that your client doesn't have standing, we don't have to wrestle with any of this anyway, right? Well, it would be a cut-off point, really, from addressing the issue, but it would be what the prejudice that flowed, and then the prejudice that flowed to the trial, because the prejudice in the trial, as I'll address now, is primarily the fruits of that search. Well, you're pretty much out of time, Mr. Nelson, so why don't you make a brief argument on rebuttal, which you've reserved three minutes for, if I'm understanding this correctly? Yes, Your Honor. Great. Thank you. Mr. LaRoche? Thank you, Your Honors. Good morning. May it please the Court. My name is Matthew LaRoche. I represent the government on appeal, and I represented the government at trial below. With respect to the search issue, first, there is no reasonable expectation of privacy for Mr. Muriel Morales in the vehicle. The only information before the District Court below was an affidavit by Muriel Morales who said that, I am a passenger in the vehicle, and therefore, I have a reasonable expectation of privacy. Under clear precedent, that is simply not enough to establish a reasonable... But your adversary argues a different circumstance here, is that for a period of time, he was alone in the vehicle. That's right, Your Honor. But there's a threshold issue, which is, first, he has to establish that he was lawfully present in the vehicle. He hasn't even asserted that below. He hasn't asserted that on appeal. There are cases saying that that is not enough, and then being a passenger alone is not sufficient. But what makes anyone think he was not lawfully in the car? Well, the car didn't belong to the driver. It didn't belong to him. The evidence below before the District Court was that it was registered in the name of another person. So we don't think that there's a sufficient basis to find that there is a reasonable expectation of privacy in the vehicle. In fact, below, he did not assert that he had a reasonable expectation of privacy as to any of the items in the vehicle, for example, the cell phones. So we just don't think that he's established that. But this issue can also be decided for a much simpler reason, and that is that there is other bases to search the vehicle. Even putting aside whether there is a reasonable basis or whether he had a reasonable expectation of privacy, the driver consented to the search of the vehicle, and there's no challenge to that consent. And there's case law saying that even if the passenger had a right to exclude, then he assumes the risk that the driver will consent to the search. So that's one basis. The second basis is there was clearly probable cause that there'd be additional contraband or evidence of the crime in the car at the time they searched. At the time they searched the car, they'd already seen the brick of cocaine in the back seat. So under the automobile exception, they also had another basis to search the vehicle. So the argument... Plain view, too, right? Plain view, Your Honor. So the automobile exception clearly applied. At that point, there was probable cause. Even putting aside the arguments about the operation of the trap, we'd argue that the inferences we drew were reasonable. They had a kilogram of cocaine in plain view of the back seat of the car. The automobile exception applied regardless of the expectation of privacy of Mr... Was that a brick that had been taken out of the trap? It had not, Your Honor. It had been brought into the house in a bag. Oh, I see. That's the one that... It came back. When the officers approached, they saw the bag on the defendant's lap and the kilogram of cocaine in the back seat. At that point, there was clearly probable cause. It had been brought into the CI, right? That's right. The CI signaled back. Was that a signal? They had told that he was coming back out. When they were in the location, they took the kilogram out of the bag. The deal didn't go through. They took the bag back into the car. Officers approached, stopped the vehicle. The bag is on the defendant's lap, and the kilogram of cocaine is in the back seat. At that point, there was clearly probable cause in our view to both arrest the defendant and to search the car pursuant to the automobile exception, which essentially says that if there is probable cause that there might be evidence of a crime, here they saw the kilogram on the floor in the back seat. That's sufficient to search the vehicle. We think at each step of the analysis, the case law is clear, the facts are clear, and there is a sufficient basis to search the vehicle. Unless the court has any other questions concerning the other issues, the government will rest on its approval. Before you step back, Mr. Nelson may argue something about the trial evidence, but I think we're talking about the same evidence that ultimately came in, right? We are, Your Honor. And I think to the extent Mr. Nelson focuses on what happened when Mr. Merlo Morales came around, and there was, in the government's view, he was trying to operate the trap with the individual inside the car, we think that was a reasonable inference to argue from the evidence. Mr. Nelson argued the opposite to the jury, and it was the jury's prerogative to determine which one was more reasonable. Given all of the facts and how the trap was operated, what we said was they probably did not know how to operate it. As the court said, there was flashing of lights. The hazard lights was right next to the rear defrost button. The rear defrost button was the button you had to push and then put a magnet at a certain place on the console to operate the trap. So our point was they probably didn't remember exactly the combination of buttons to push, and so they had to do it again when they got to the location. We thought that that was a reasonable inference to argue to the jury. The jury clearly agreed, and it was the prerogative of the jury to do so. And on a sufficiency challenge, the court must credit every inference in the government's favor. Thank you. Thank you, Your Honor. Mr. Nelson, you have reserved some time for rebuttal. Yes. First, very briefly on the search issue, and it goes into the evidence argument. The evidence demonstrated that at least the driver of the vehicle, less than an hour earlier, had opened the trap in Fort Lee, New Jersey. So he would have known exactly how to open the trap. And my application on my motion in limine was to preclude the evidence with respect to what happened in Fort Lee, because there was no evidence to demonstrate that my client had been in the car at that point in time so he would have had any knowledge of what took place. But certainly, the government's inference that they argued that the driver didn't know how to open the trap, and he had opened it less than an hour earlier, is ludicrous. But we submit that the court erred in failing to redact portions of the confidential information. Maybe the warranty had expired on the trap, and it wasn't operating the way it was designed. I'm sorry? I said, maybe the warranty had expired on the trap, and it wasn't operating the way it was designed. Well, actually, it operated rather well, Your Honor, when we went to and spent video in the calendar a year later, so I was aware of the information that came in. Did it require some kind of a combination? Yeah, in essence, it was two things. You would have to press the windshield wiper fluid button, and then there was a magnet that slid down that opened it up. But no numbers or anything like that? No numbers or anything like that that was involved in doing it. It was a rather simple procedure. And a magnet was applied and slid down where? The magnet was located right in the middle of the console when the car was searched, and that's where it was seized from. It was located? It was sitting right in the middle of the console, right next to where my client fell asleep. And then it had to be? You would slide it down, and it would have the back seat come up is the manner in which it operated. We actually took a video of it that was introduced during the course of the trial. As it relates to the evidentiary rulings by the court, we would submit that the district court erred in allowing into evidence the testimony concerning a delivery of a prior kilogram of cocaine by the driver of the vehicle in New Jersey. We had sought to preclude that from being introduced into evidence. And in order to raise the issue, under FRA 801b2e, the government is required to demonstrate by a preponderance of the evidence as a preliminary matter that the person against whom the statement was offered, the appellant, was a member of the conspiracy. And we would submit that the proper pretrial that the government made was inaccurate in three material respects. First, they presented to the court that the confidential informant walked into the middle of the street and spoke to the driver of the vehicle while my client was sitting in the vehicle and stated in some substance, or the driver stated in some substance, hold on, I have to open the trap first before I come upstairs to the apartment. However, the trial evidence demonstrated that two officers were situated in a vehicle looking directly at this car two cars away, and neither of them saw the confidential informant standing in the middle of the street engaging in this conversation. There was no testimony concerning it whatsoever. As I indicated previously, the second claim that the government made is that the complaint itself made out that my client had opened the rear door of the vehicle and reached in, and as the government later conceded, that was not the state. It was completely different to that. And finally, the government sought to demonstrate that a telephone call made by the co-defendant from the apartment to a third individual had to be my client, and therefore he was a member of the conspiracy. However, the substance of the conversation itself demonstrated that the co-defendant stated to the third person on the line, I'm in New York now. Now certainly he would not have to say that to Mr. Morello, who was sitting inside of the car right downstairs at that time. So that the information... That you point out as inconsistencies. Yes. Some substantial. And each one... Were they argued... I know they're inconsistencies. Were they argued to the jury? Were those inconsistencies argued to the jury? They certainly were. They were argued to the jury, and they were argued in the motion limiting. However, the jury heard all of the evidence concerning this Fort Lee transaction that took place an hour earlier that was not charged in the indictment, that was not charged as the original complaint, and to which there was no evidence to demonstrate that my client was present for. And that's why we had moved, for purposes of keeping it out under FRE... Fort Lee's over in New Jersey, right? Right. And this took place... Even the Southern District doesn't try to assert jurisdiction in New Jersey, you know. Well, there weren't any phone calls made from there to New York at that time that I moved. Actually, there might have been one. The last issue that I wanted to raise had to do with the introduction into evidence, also in my motion limiting, of a text message that was sent by my client to a third party on January the 29th, the day before these events took place. And that was a text message wherein there's a discussion of the acquisition of his alleged sale of a controlled substance in the future to a third party. And I would submit, as I argued in my motion limiting, that this was not part of the charge conspiracy in the case. This was a conspiracy that involved an undercover operation with the co-defendant that had gone on for a month and supplied two kilograms of cocaine to two confidential informants, which came to conclusion on January the 30th. On January the 30th, that's the very first time the government became aware of my client's existence. I would submit that the recording of the text message on January the 29th, which was to the investigation, and the context of the conversation was a future transaction to a third party that was never actually agreed to, did not arise out of this two kilogram buy that was scheduled, was not inextricably intertwined with the 130 transaction, and certainly was not necessary to complete the story of what occurred on January the 30th. Rather, the text messages were evidence of uncharged conduct, as was the Fort Lee conduct to the right. I think we've got your point, Mr. Knowles. The government introduced this for a court of evidence. Thank you. Thank you. Thank you both. We'll reserve decision in this case.